**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: September 28, 2026**

Tiffany Strelow Cobb
United States Bankruptcy Judge

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| | ) | |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | |
| | ) | **JUDGE TIFFANY STRELOW COBB** |
| | ) | **United States Bankruptcy Judge** |

**ORDER GRANTING MOTION [DOC. 89] PURSUANT TO BANKRUPTCY RULE 2004 (I) DIRECTING THE EXAMINATION OF THE DEBTOR AND AFFILIATED ENTITIES AND INDIVIDUALS, AND (II) REQUIRING THE PRODUCTION OF DOCUMENTS**

Upon consideration of the motion [Doc. 89] (the "Motion")[1] of Hockomock Mining Company ("HMC") for entry of this order (this "Order"), pursuant to Bankruptcy Rule 2004, (i) authorizing the examinations of Supplybit, LLC ("Supplybit"); RepairBit LLC ("RepairBit"); Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; and Randy Heinig (collectively, the "Examinees"), and (ii) requiring the Examinees to produce documents responsive to the requests for production (the "Requests for Production") attached hereto as **Exhibits 1-15**; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of Ohio, dated September 16, 2016; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is appropriate; and this Court having found that notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. HMC is authorized to issue the Requests for Production to the Examinees substantially in the form attached hereto as **Exhibits 1-15** pursuant to Bankruptcy Rule 2004. The Examinees are directed to (i) produce documents or otherwise respond to their respective Requests for Production within thirty (30) days of service in accordance with applicable Bankruptcy Rules and Rules of Federal Civil Procedure; and (ii) appear for oral examinations and provide testimony

within fourteen days of service of the notice of deposition on such Examinee in accordance with applicable Bankruptcy Rules and Rules of Federal Civil Procedure, absent agreement from HMC or further order of a court with jurisdiction.

3. The Examinees shall comply with the aforementioned deadlines and participate in good faith in the requested discovery and complying with this Order.

4. This Order is without prejudice to the right of HMC to seek further discovery from the Examinees or any other individual or entity.

5. The terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

6. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SO ORDERED.

Copies to: Default List.

###

# **Exhibit 1**

## Request for Production to Supplybit

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| | ) | |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | |
| | ) | **JUDGE TIFFANY STRELOW COBB** |
| | ) | **United States Bankruptcy Judge** |
| | ) | |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO SUPPLYBIT, LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company ("HMC") by and through its undersigned counsel, hereby requests that Supplybit, LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026.

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part,

whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, options, warrants, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined

herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "HMC" means Hockomock Mining Company.

8. "HMC Action" means the civil action brought by HMC against Supplybit in the Superior Court of the State of Delaware captioned *Hockomock Mining Company v. Supplybit, LLC*, Case No. N23C-10-135 MAA CCLD.

9. "Judgment" means the Stipulated and Order of Judgment entered in the HMC Action on January 9, 2024.

10. "Other Actions" means other civil actions brought against or by Supplybit since January 1, 2023, including but not limited to:

(a) *Aghamalian et al v. Supplybit, LLC*, No. 1:23-cv-15597 (N.D.Ill.),

(b) *APS Group, Inc. v. Supplybit, LLC*, No. 123-cv-14378 (N.D.Ill.),

(c) *Coinfinity LLC v. Supplybit*, LLC, No. 1:23-cv-07297 (N.D.Ill.),

(d) *Michael E. Gumprecht LLC v. Supplybit, LLC*, No. 2023CH08872 (CHCAL2),

(e) *Raw Properties Elmwood, LLC v. Supplybit, LLC*, No. CV-23-987589 (CCCCP),

(f) *Rioton SRL et al v. Supplybit, LLC*, No. 1:23-cv-04136 (N.D.Ill.), and

(g) *Pollan v. Supplybit, LLC*, No. 1:23-cv-14079 (N.D.Ill.),

(h) *Supplybit LLC v. Elite Mining Inc., et al*, No. 23-cv-00077 (D. Wyo.),

(i) *Supplybit, LLC v. Standard Power Hosting Infra Co., LLC*, No. 654473/2023 (N.Y.).

11. "Other Counterparties" means other individuals and entities who have entered into mining services agreements with Supplybit or brought actions against Supplybit arising from Supplybit's suspension of crypto mining services, including:

(a) APS Group, Inc.,

(b) Coinfinity, LLC,

(c) Daniele Landro,

(d) David Aghamalian,

(e) Justin Burbank,

(f) Michael E. Gumprecht LLC,

(g) Rioton SRL, and

(h) Thomas Pollan.

12. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

13. "Supplybit," "You," or "Your" means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

14. "Trustee" means the trustee appointed in this chapter 7 case, James A. Coutinho, or any successor thereto.

15. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## **INSTRUCTIONS**

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

13. Unless otherwise specified the Relevant Period for these Requests is November 1, 2021 through the present.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Communications regarding Supplybit's and its affiliates' Assets, wherever and howsoever held.

**REQUEST NO. 4:**

All Documents and Communications regarding the capitalization of Supplybit, including any equity or debt financing and all transfers of money or other Assets to Supplybit from any Person or entity.

**REQUEST NO. 5:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Period, including but not limited to among and/or between Supplybit; RepairBit LLC; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or

any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Period, including but not limited to among and/or between Supplybit; RepairBit LLC; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to brokerage agreements or similar arrangements with third parties in connection with any type of sale, divestment, or other transfer of Supplybit's Assets.

**REQUEST NO. 8:**

Any analysis of the creditworthiness, going-concern ability, solvency, or insolvency of Supplybit during the Relevant Time Period.

**REQUEST NO. 9:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You and any of Your affiliates, including but not limited to Your officers, directors, managers, members, equity holders, equity sponsors, or lenders; RepairBit LLC; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 10:**

All Documents and Communications regarding any cryptocurrency mining pools, including any Financial Records, statements, ledgers, reports, wallet addresses, and digital or cryptocurrency generated by or associated with each such pool.

**REQUEST NO. 11:**

All Documents and Communications regarding every domestic and foreign bank, financial institution, or digital or cryptocurrency exchange in which Supplybit holds or held or is or was the beneficiary of an account, including (i) the name of such bank, financial institution, or cryptocurrency exchange; (ii) the accountholder's name(s); (iii) the beneficiaries of the account; (iv) the account number/wallet address; (v) the date the account was created; (vi) the type of account; (vii) the Assets held in the account at any point in time; and (viii) the current value of the account.

**REQUEST NO. 12:**

Documents sufficient to show the organizational structure of Supplybit, including the legal relationships between Supplybit and any of its owners or subsidiaries, whether partially- or fully-held.

**REQUEST NO. 13:**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for Supplybit.

**REQUEST NO. 14:**

Documents sufficient to identify every Person or entity that holds an equity interest in Supplybit.

**REQUEST NO. 15:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between Supplybit, its holders in interest, affiliates, and any other entity founded, owned, or controlled by Michael Groff or Wesley Decatur, including but not limited to RepairBit LLC, Groff Consulting Group LLC, Bitsure LLC, Caldwell Distribution LLC, MW Advisory LLC, and Trinity Holdings.

**REQUEST NO. 16:**

All Financial Records and reports, including any Financial Records or reports provided to holders of interest in Supplybit.

**REQUEST NO. 17:**

All audited and unaudited financial statements of Supplybit, including but not limited to all annual and quarterly reports, income statements, balance sheets, and statements of cash flow, whether monthly, quarterly, annual or otherwise.

**REQUEST NO. 18:**

All Financial Records, statements, ledgers, or similar reports, whether monthly, quarterly, annual or otherwise, and other Documents relating to each account Supplybit maintains or previously maintained during the Relevant Period with any bank, savings and loan association, credit union, brokerage or investment company, digital or cryptocurrency exchange, or other repository or financial institution, regardless of whether Supplybit currently maintains any such account with such institution.

**REQUEST NO. 19:**

All Documents and Communications relating to any controls on withdrawal of funds from each account Supplybit maintains or previously maintained during the Relevant Period with any bank, savings and loan association, credit union, brokerage or investment company, digital or

cryptocurrency exchange, or other repository or financial institution, regardless of whether Supplybit currently maintains any such account with such institution.

**REQUEST NO. 20:**

Documents sufficient to identify each equity investment, loan, line of credit, cash payment, or other financial benefit, including any loan or other instrument converted into equity, You received during the Relevant Period of (or in excess of) $1,000.00 (collectively, the "benefit") from any source, the date the benefit was received, the purpose of the benefit, and what value or consideration You provided in exchange for the benefit.

**REQUEST NO. 21:**

All Documents and Communications relating to the payment of Supplybit's debts, liabilities, or other financial obligations during the Relevant Period, or Supplybit's decision to forgo any such payments.

**REQUEST NO. 22:**

All Documents and Communications relating to the payment of Supplybit's legal bills relating to the HMC Action and in any of the Other Actions.

**REQUEST NO. 23:**

All Documents and Communications evidencing or relating to any rights of Supplybit to insurance coverage for legal bills relating to the HMC Action and any of the Other Actions.

**REQUEST NO. 24:**

All Documents and Communications relating to Supplybit's revenues, business forecasts or projections, or business engagements.

**REQUEST NO. 25:**

All Documents and Communications relating to any compensation offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled by Ryan

Rossi, Kevin Kiss, Michael Groff, or Wesley Decatur such as MW Advisory LLC), or earned by Michael Groff, including but not limited to any bonuses.

**REQUEST NO. 26:**

All Documents and Communications relating to any compensation offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled by Ryan Rossi, Kevin Kiss, Michael Groff, or Wesley Decatur such as MW Advisory LLC), or earned by Wesley Decatur, including but not limited to any bonuses and payments made to entities owned or controlled by Wesley Decatur, including but not limited to any bonuses.

**REQUEST NO. 27:**

All Documents and Communications relating to any compensation offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled by Ryan Rossi, Kevin Kiss, Michael Groff, or Wesley Decatur such as MW Advisory LLC), or earned by Ryan Rossi, including but not limited to any bonuses.

**REQUEST NO. 28:**

All Documents and Communications relating to any compensation offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled by Ryan Rossi, Kevin Kiss, Michael Groff, or Wesley Decatur such as MW Advisory LLC), or earned by Kevin Kiss, including but not limited to any bonuses.

**REQUEST NO. 29:**

All Documents and Communications relating to any loans or other debt facilities issued to Supplybit, including any loans or debt facilities between Anchorage Lending CA, LLC, Bristol Morgan Bank, Michael Groff, or Wesley Decatur, on the one hand, and Supplybit on the other hand.

**REQUEST NO. 30:**

All Documents and Communications evidencing any agreement or obligation of Supplybit to advance, indemnify, or otherwise pay for legal expenses incurred by Michael Groff or Wesley Decatur.

**REQUEST NO. 31:**

All Documents and Communications evidencing or relating to any of Supplybit's rights to advancement or indemnification.

**REQUEST NO. 32:**

All Documents and Communications relating to any sale, potential sale, transfer, or disposition of Supplybit, in whole or in part.

**REQUEST NO. 33:**

Documents sufficient to identify all of Supplybit's tangible or intangible Assets, including the physical location of any Assets if applicable.

**REQUEST NO. 34:**

All Documents and Communications regarding any appraisals or valuations of Supplybit, or any of its property or other Assets.

**REQUEST NO. 35:**

Documents sufficient to identify each entity in which Supplybit owns an equity interest, including but not limited to corporations, partnerships, limited partnerships, limited liability companies, limited liability partnerships, subsidiaries, or parents.

**REQUEST NO. 36:**

Documents sufficient to identify any joint ventures in which Supplybit was involved.

**REQUEST NO. 37:**

All Documents and Communications concerning any appraisals or valuations of any entities in which Supplybit owns an interest.

**REQUEST NO. 38:**

All Documents and Communications between Supplybit and its auditors.

**REQUEST NO. 39:**

All tax returns filed during the Relevant Period on behalf of Supplybit.

**REQUEST NO. 40:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

**REQUEST NO. 41:**

All Documents and Communications relating to the satisfaction, whether partial or complete, of each settlement or judgment entered in any of the Other Actions or agreed to between Supplybit and the Other Counterparties.

**REQUEST NO. 42:**

All board or committee resolutions, minutes, consents, or presentations during the Relevant Period.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 2**

## **Request for Production to RepairBit**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>SUPPLYBIT, LLC<br>Debtor. | Case No. 25-55423<br><br>Chapter 7 (Involuntary)<br><br>**JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO REPAIRBIT LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that RepairBit LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part,

whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail" , Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined

herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

8. "RepairBit," "You," or "Your" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

9. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

10. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

11. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

12. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of RepairBit, including any equity or debt financing and all transfers of money or other Assets to RepairBit from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to RepairBit.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to RepairBit.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

Documents sufficient to show the organizational structure of RepairBit, including the legal relationships between RepairBit and any of its owners or subsidiaries, whether partially- or fully-held.

**REQUEST NO. 10:**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for RepairBit.

**REQUEST NO. 11:**

Documents sufficient to identify every Person or entity that holds an equity interest in RepairBit.

**REQUEST NO. 12:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage

Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 14:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 15:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All tax returns filed during the Relevant Time Period on behalf of RepairBit.

**REQUEST NO. 18:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*

Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# <u>Exhibit 3</u>

## Request for Production to Michael Groff

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| | ) | |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | |
| | ) | **JUDGE TIFFANY STRELOW COBB** |
| | ) | **United States Bankruptcy Judge** |
| | ) | |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO MICHAEL GROFF**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company ("HMC") by and through its undersigned counsel, hereby requests that Michael Groff produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

## DEFINITIONS

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026.

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part,

whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, options, warrants, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined

herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "HMC" means Hockomock Mining Company.

8. “HMC Action” means the civil action brought by HMC against Supplybit in the Superior Court of the State of Delaware captioned *Hockomock Mining Company v. Supplybit, LLC*, Case No. N23C-10-135 MAA CCLD.

9. “Judgment” means the Stipulated and Order of Judgment entered in the HMC Action on January 9, 2024.

10. “Other Actions” means other civil actions brought against or by Supplybit since January 1, 2023, including but not limited to:

(a) *Aghamalian et al v. Supplybit, LLC*, No. 1:23-cv-15597 (N.D.Ill.),

(b) *APS Group, Inc. v. Supplybit, LLC*, No. 123-cv-14378 (N.D.Ill.),

(c) *Coinfinity LLC v. Supplybit*, LLC, No. 1:23-cv-07297 (N.D.Ill.),

(d) *Michael E. Gumprecht LLC v. Supplybit, LLC*, No. 2023CH08872 (CHCAL2),

(e) *Raw Properties Elmwood, LLC v. Supplybit, LLC*, No. CV-23-987589 (CCCCP),

(f) *Rioton SRL et al v. Supplybit, LLC*, No. 1:23-cv-04136 (N.D.Ill.), and

(g) *Pollan v. Supplybit, LLC*, No. 1:23-cv-14079 (N.D.Ill.),

(h) *Supplybit LLC v. Elite Mining Inc., et al*, No. 23-cv-00077 (D. Wyo.),

(i) *Supplybit, LLC v. Standard Power Hosting Infra Co., LLC*, No. 654473/2023 (N.Y.).

11. “Other Counterparties” means other individuals and entities who have entered into mining services agreements with Supplybit or brought actions against Supplybit arising from Supplybit’s suspension of crypto mining services, including:

(a) APS Group, Inc.,

(b) Coinfinity, LLC,

(c) Daniele Landro,

(d) David Aghamalian,

(e) Justin Burbank,

(f) Michael E. Gumprecht LLC,

(g) Rioton SRL, and

(h) Thomas Pollan.

12. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

13. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

14. "Trustee" means the trustee appointed in this chapter 7 case, James A. Coutinho, or any successor thereto.

15. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

16. "You" or "Your" means Michael Groff and any of his agents, representatives, attorneys, spouses, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Michael Groff.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Supplybit, including any equity or debt financing and all transfers of money or other Assets to Supplybit from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your Affiliates.

**<u>REQUEST NO. 7:</u>**

All Documents and Communications evidencing or relating to any attempted, contemplated or potential transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**<u>REQUEST NO. 8:</u>**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; RepairBit LLC; Wesley Decatur; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**<u>REQUEST NO. 9:</u>**

All Documents and Communications relating to Supplybit or its affiliates' payment or satisfaction of Your legal bills relating to the HMC Action and in any of the Other Actions.

**<u>REQUEST NO. 10:</u>**

All Documents and Communications evidencing or relating to any rights of You or Supplybit to insurance coverage for legal bills relating to the HMC Action and any of the Other Actions.

**<u>REQUEST NO. 11:</u>**

All Documents and Communications relating to any compensation (including but not limited to non-cash compensation such as stocks, options, warrants, or cryptocurrency) offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled

by Ryan Rossi, Kevin Kiss, You, or Wesley Decatur such as MW Advisory LLC), or earned by You, including but not limited to any bonuses.

**REQUEST NO. 12:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 14:**

All Documents and Communications evidencing any agreement or obligation of Supplybit to advance, indemnify, or otherwise pay for legal expenses incurred by You.

**REQUEST NO. 15:**

All Documents and Communications evidencing or relating to any of Your rights to advancement or indemnification.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC or its affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 18:**

All tax returns filed during the Relevant Time Period on behalf of You.

**REQUEST NO. 19:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

**REQUEST NO. 20:**

All Documents and Communications relating to the satisfaction, whether partial or complete, of each settlement or judgment entered in any of the Other Actions or agreed to between You and the Other Counterparties.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 4**

**Request for Production to Wesley Decatur**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 25-55423 |
| SUPPLYBIT, LLC | Chapter 7 (Involuntary) |
| Debtor. | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO WESLEY DECATUR**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company ("HMC") by and through its undersigned counsel, hereby requests that Wesley Decatur produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026.

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part,

whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, options, warrants, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined

herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "HMC" means Hockomock Mining Company.

8. "HMC Action" means the civil action brought by HMC against Supplybit in the Superior Court of the State of Delaware captioned *Hockomock Mining Company v. Supplybit, LLC*, Case No. N23C-10-135 MAA CCLD.

9. "Judgment" means the Stipulated and Order of Judgment entered in the HMC Action on January 9, 2024.

10. "Other Actions" means other civil actions brought against or by Supplybit since January 1, 2023, including but not limited to:

(a) *Aghamalian et al v. Supplybit, LLC*, No. 1:23-cv-15597 (N.D.Ill.),

(b) *APS Group, Inc. v. Supplybit, LLC*, No. 123-cv-14378 (N.D.Ill.),

(c) *Coinfinity LLC v. Supplybit*, LLC, No. 1:23-cv-07297 (N.D.Ill.),

(d) *Michael E. Gumprecht LLC v. Supplybit, LLC*, No. 2023CH08872 (CHCAL2),

(e) *Raw Properties Elmwood, LLC v. Supplybit, LLC*, No. CV-23-987589 (CCCCP),

(f) *Rioton SRL et al v. Supplybit, LLC*, No. 1:23-cv-04136 (N.D.Ill.), and

(g) *Pollan v. Supplybit, LLC*, No. 1:23-cv-14079 (N.D.Ill.),

(h) *Supplybit LLC v. Elite Mining Inc., et al*, No. 23-cv-00077 (D. Wyo.),

(i) *Supplybit, LLC v. Standard Power Hosting Infra Co., LLC*, No. 654473/2023 (N.Y.).

11. "Other Counterparties" means other individuals and entities who have entered into mining services agreements with Supplybit or brought actions against Supplybit arising from Supplybit's suspension of crypto mining services, including:

(a) APS Group, Inc.,

(b) Coinfinity, LLC,

(c) Daniele Landro,

(d) David Aghamalian,

(e) Justin Burbank,

(f) Michael E. Gumprecht LLC,

(g) Rioton SRL, and

(h) Thomas Pollan.

12. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

13. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

14. "Trustee" means the trustee appointed in this chapter 7 case, James A. Coutinho, or any successor thereto.

15. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

16. "You" or "Your" means Wesley Decatur and any of his agents, representatives, attorneys, spouses, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Wesley Decatur.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Supplybit, including any equity or debt financing and all transfers of money or other Assets to Supplybit from any Person or entity, that are in your possession or control.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any attempted, contemplated or potential transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; RepairBit LLC; Michael Groff; Ryan Rossi; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications relating to Supplybit or its affiliates' payment or satisfaction of Your legal bills relating to the HMC Action and in any of the Other Actions.

**REQUEST NO. 10:**

All Documents and Communications evidencing or relating to any of Your rights to insurance coverage for legal bills relating to the HMC Action and any of the Other Actions.

**REQUEST NO. 11:**

All Documents and Communications relating to any compensation (including but not limited to non-cash compensation such as stocks, options, warrants, or cryptocurrency) offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled

by You, Ryan Rossi, Kevin Kiss, or Michael Groff such as MW Advisory LLC), or earned by You, including but not limited to any bonuses.

**REQUEST NO. 12:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 14:**

All Documents and Communications evidencing any agreement or obligation of Supplybit to advance, indemnify, or otherwise pay for legal expenses incurred by You.

**REQUEST NO. 15:**

All Documents and Communications evidencing or relating to any of Your rights to advancement or indemnification.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC or its affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 18:**

All tax returns filed during the Relevant Time Period on behalf of You.

**REQUEST NO. 19:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

**REQUEST NO. 20:**

All Documents and Communications relating to the satisfaction, whether partial or complete, of each settlement or judgment entered in any of the Other Actions or agreed to between You and the Other Counterparties.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# Exhibit 5

## Request for Production to Ryan Rossi

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>SUPPLYBIT, LLC<br>Debtor. | Case No. 25-55423<br><br>Chapter 7 (Involuntary)<br><br>**JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET
OF REQUESTS FOR PRODUCTION DIRECTED TO RYAN ROSSI**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company ("HMC") by and through its undersigned counsel, hereby requests that Ryan Rossi produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026.

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part,

whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, options, warrants, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined

herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "HMC" means Hockomock Mining Company.

8. "HMC Action" means the civil action brought by HMC against Supplybit in the Superior Court of the State of Delaware captioned *Hockomock Mining Company v. Supplybit, LLC*, Case No. N23C-10-135 MAA CCLD.

9. "Judgment" means the Stipulated and Order of Judgment entered in the HMC Action on January 9, 2024.

10. "Other Actions" means other civil actions brought against or by Supplybit since January 1, 2023, including but not limited to:

(a) *Aghamalian et al v. Supplybit, LLC*, No. 1:23-cv-15597 (N.D.Ill.),

(b) *APS Group, Inc. v. Supplybit, LLC*, No. 123-cv-14378 (N.D.Ill.),

(c) *Coinfinity LLC v. Supplybit*, LLC, No. 1:23-cv-07297 (N.D.Ill.),

(d) *Michael E. Gumprecht LLC v. Supplybit, LLC*, No. 2023CH08872 (CHCAL2),

(e) *Raw Properties Elmwood, LLC v. Supplybit, LLC*, No. CV-23-987589 (CCCCP),

(f) *Rioton SRL et al v. Supplybit, LLC*, No. 1:23-cv-04136 (N.D.Ill.), and

(g) *Pollan v. Supplybit, LLC*, No. 1:23-cv-14079 (N.D.Ill.),

(h) *Supplybit LLC v. Elite Mining Inc., et al*, No. 23-cv-00077 (D. Wyo.),

(i) *Supplybit, LLC v. Standard Power Hosting Infra Co., LLC*, No. 654473/2023 (N.Y.).

11. "Other Counterparties" means other individuals and entities who have entered into mining services agreements with Supplybit or brought actions against Supplybit arising from Supplybit's suspension of crypto mining services, including:

(a) APS Group, Inc.,

(b) Coinfinity, LLC,

(c) Daniele Landro,

(d) David Aghamalian,

(e) Justin Burbank,

(f) Michael E. Gumprecht LLC,

(g) Rioton SRL, and

(h) Thomas Pollan.

12. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

13. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

14. "Trustee" means the trustee appointed in this chapter 7 case, James A. Coutinho, or any successor thereto.

15. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

16. "You" or "Your" means Ryan Rossi and any of his agents, representatives, attorneys, spouses, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Ryan Rossi.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Supplybit, including any equity or debt financing and all transfers of money or other Assets to Supplybit from any Person or entity, that are in your possession or control.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any attempted, contemplated or potential transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; RepairBit LLC; Michael Groff; Wesley Decatur; Kevin Kiss; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications relating to Supplybit or its affiliates' payment or satisfaction of Your legal bills relating to the HMC Action and in any of the Other Actions.

**REQUEST NO. 10:**

All Documents and Communications evidencing or relating to any of Your rights to insurance coverage for legal bills relating to the HMC Action and any of the Other Actions.

**REQUEST NO. 11:**

All Documents and Communications relating to any compensation (including but not limited to non-cash compensation such as stocks, options, warrants, or cryptocurrency) offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled

by You, Wesley Decatur, Kevin Kiss, or Michael Groff such as MW Advisory LLC), or earned by You, including but not limited to any bonuses.

**REQUEST NO. 12:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 14:**

All Documents and Communications evidencing any agreement or obligation of Supplybit to advance, indemnify, or otherwise pay for legal expenses incurred by You.

**REQUEST NO. 15:**

All Documents and Communications evidencing or relating to any of Your rights to advancement or indemnification.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC or its affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 18:**

All tax returns filed during the Relevant Time Period on behalf of You.

**REQUEST NO. 19:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

**REQUEST NO. 20:**

All Documents and Communications relating to the satisfaction, whether partial or complete, of each settlement or judgment entered in any of the Other Actions or agreed to between You and the Other Counterparties.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*

Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 6**

## **Request for Production to Kevin Kiss**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO KEVIN KISS**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company ("HMC") by and through its undersigned counsel, hereby requests that Kevin Kiss produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026.

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part,

whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, options, warrants, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined

herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "HMC" means Hockomock Mining Company.

8. "<u>HMC Action</u>" means the civil action brought by HMC against Supplybit in the Superior Court of the State of Delaware captioned *Hockomock Mining Company v. Supplybit, LLC*, Case No. N23C-10-135 MAA CCLD.

9. "<u>Judgment</u>" means the Stipulated and Order of Judgment entered in the HMC Action on January 9, 2024.

10. "<u>Other Actions</u>" means other civil actions brought against or by Supplybit since January 1, 2023, including but not limited to:

(a) *Aghamalian et al v. Supplybit, LLC*, No. 1:23-cv-15597 (N.D.Ill.),

(b) *APS Group, Inc. v. Supplybit, LLC*, No. 123-cv-14378 (N.D.Ill.),

(c) *Coinfinity LLC v. Supplybit*, LLC, No. 1:23-cv-07297 (N.D.Ill.),

(d) *Michael E. Gumprecht LLC v. Supplybit, LLC*, No. 2023CH08872 (CHCAL2),

(e) *Raw Properties Elmwood, LLC v. Supplybit, LLC*, No. CV-23-987589 (CCCCP),

(f) *Rioton SRL et al v. Supplybit, LLC*, No. 1:23-cv-04136 (N.D.Ill.), and

(g) *Pollan v. Supplybit, LLC*, No. 1:23-cv-14079 (N.D.Ill.),

(h) *Supplybit LLC v. Elite Mining Inc., et al*, No. 23-cv-00077 (D. Wyo.),

(i) *Supplybit, LLC v. Standard Power Hosting Infra Co., LLC*, No. 654473/2023 (N.Y.).

11. "<u>Other Counterparties</u>" means other individuals and entities who have entered into mining services agreements with Supplybit or brought actions against Supplybit arising from Supplybit's suspension of crypto mining services, including:

(a) APS Group, Inc.,

(b) Coinfinity, LLC,

(c) Daniele Landro,

(d) David Aghamalian,

(e) Justin Burbank,

(f) Michael E. Gumprecht LLC,

(g) Rioton SRL, and

(h) Thomas Pollan.

12. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

13. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

14. "Trustee" means the trustee appointed in this chapter 7 case, James A. Coutinho, or any successor thereto.

15. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

16. "You" or "Your" means Ryan Rossi and any of his agents, representatives, attorneys, spouses, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Ryan Rossi.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit and its affiliates that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Supplybit, including any equity or debt financing and all transfers of money or other Assets to Supplybit from any Person or entity, that are in your possession or control.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any attempted, contemplated or potential transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You or Your affiliates.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; RepairBit LLC; Michael Groff; Wesley Decatur; Ryan Rossi; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications relating to Supplybit or its affiliates' payment or satisfaction of Your legal bills relating to the HMC Action and in any of the Other Actions.

**REQUEST NO. 10:**

All Documents and Communications evidencing or relating to any of Your rights to insurance coverage for legal bills relating to the HMC Action and any of the Other Actions.

**REQUEST NO. 11:**

All Documents and Communications relating to any compensation (including but not limited to non-cash compensation such as stocks, options, warrants, or cryptocurrency) offered to, paid to (either directly or indirectly through other entities, including entities owned or controlled

by You, Wesley Decatur, Ryan Rossi, or Michael Groff such as MW Advisory LLC), or earned by You, including but not limited to any bonuses.

**REQUEST NO. 12:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 14:**

All Documents and Communications evidencing any agreement or obligation of Supplybit to advance, indemnify, or otherwise pay for legal expenses incurred by You.

**REQUEST NO. 15:**

All Documents and Communications evidencing or relating to any of Your rights to advancement or indemnification.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC or its affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 18:**

All tax returns filed during the Relevant Time Period on behalf of You.

**REQUEST NO. 19:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

**REQUEST NO. 20:**

All Documents and Communications relating to the satisfaction, whether partial or complete, of each settlement or judgment entered in any of the Other Actions or agreed to between You and the Other Counterparties.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*

Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# Exhibit 7

**Request for Production to Groff Consulting Group LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 25-55423 |
| SUPPLYBIT, LLC | Chapter 7 (Involuntary) |
| Debtor. | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO GROFF CONSULTING GROUP LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Groff Consulting Group LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

## DEFINITIONS

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character

and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or

reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. “Electronically Stored Information” or “ESI” means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. “Financial Records” means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person’s finances, financial position and financial transactions, including but not limited to the Person’s accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives,

including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "Groff Consulting Group," "You," or "Your" means Groff Consulting Group LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Groff Consulting Group LLC.

8. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

9. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

10. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

11. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

12. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

13. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits,

enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Groff Consulting Group, including any equity or debt financing and all transfers of money or other Assets to Groff Consulting Group from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money,

value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Groff Consulting Group.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Groff Consulting Group.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

Documents sufficient to show the organizational structure of Groff Consulting Group, including the legal relationships between Groff Consulting Group and any of its owners or subsidiaries, whether partially- or fully-held.

**REQUEST NO. 10:**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for Groff Consulting Group.

**REQUEST NO. 11:**

Documents sufficient to identify every Person or entity that holds an equity interest in Groff Consulting Group.

**REQUEST NO. 12:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 14:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 15:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All tax returns filed during the Relevant Time Period on behalf of Groff Consulting Group.

**REQUEST NO. 18:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 8**

**Request for Production to Bitsure LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO BITSURE LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Bitsure LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or

otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Bitsure," "You," or "Your" means Bitsure LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Bitsure LLC.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

5. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the

custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

6. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

7. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial

condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

8. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

9. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

10. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

11. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

12. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

13. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors,

members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the

parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Bitsure, including any equity or debt financing and all transfers of money or other Assets to Bitsure from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Bitsure.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Bitsure.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; RepairBit; Groff Consulting LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

Documents sufficient to show the organizational structure of Bitsure, including the legal relationships between Bitsure and any of its owners or subsidiaries, whether partially- or fully-held.

**REQUEST NO. 10:**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for Bitsure.

**REQUEST NO. 11:**

Documents sufficient to identify every Person or entity that holds an equity interest in Bitsure.

**REQUEST NO. 12:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 14:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 15:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All tax returns filed during the Relevant Time Period on behalf of Bitsure.

**REQUEST NO. 18:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# <u>Exhibit 9</u>

## Request for Production to Caldwell Distribution LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re:<br><br>SUPPLYBIT, LLC<br>Debtor. | ) | Case No. 25-55423<br><br>Chapter 7 (Involuntary)<br><br>**JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO CALDWELL DISTRIBUTION LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Caldwell Distribution LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character

and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Caldwell Distribution," "You," or "Your" means Caldwell Distribution LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Caldwell Distribution LLC.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

5. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034

and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

6. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

7. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting

records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

8. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

9. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

10. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

11. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

12. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

13. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of

Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the

parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Caldwell Distribution, including any equity or debt financing and all transfers of money or other Assets to Caldwell Distribution from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Caldwell Distribution.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Caldwell Distribution.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; RepairBit; Groff Consulting LLC; Bitsure LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

Documents sufficient to show the organizational structure of Caldwell Distribution, including the legal relationships between Caldwell Distribution and any of its owners or subsidiaries, whether partially- or fully-held.

**REQUEST NO. 10:**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for Caldwell Distribution.

**REQUEST NO. 11:**

Documents sufficient to identify every Person or entity that holds an equity interest in Caldwell Distribution.

**REQUEST NO. 12:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 14:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 15:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All tax returns filed during the Relevant Time Period on behalf of Caldwell Distribution.

**REQUEST NO. 18:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

Dated: _________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 10**

## Request for Production to Anchorage Lending CA, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO**
**ANCHORAGE LENDING CA, LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Anchorage Lending CA, LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

## DEFINITIONS

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Anchorage Lending," "You," or "Your" means Anchorage Lending CA, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members,

corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Anchorage Lending CA, LLC.

3. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

5. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034

and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

6. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

7. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting

records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

8. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

9. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

10. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

11. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

12. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

13. "Trinity Holdings," means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC,

and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the

parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## <u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

**<u>REQUEST NO. 1:</u>**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**<u>REQUEST NO. 2:</u>**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**<u>REQUEST NO. 3:</u>**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**<u>REQUEST NO. 4:</u>**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**<u>REQUEST NO. 5:</u>**

All Documents and Communications regarding the capitalization of Trinity Holdings, including any of Your ownership, interests, stocks, warrants, options, or other rights associated with Trinity Holdings, whether direct or indirect or in whole or in part, and any equity or debt financing and all transfers of money or other Assets to Trinity Holdings from any Person or entity.

**<u>REQUEST NO. 6:</u>**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Anchorage Lending.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Anchorage Lending.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting LLC; Bitsure LLC; Trinity Holdings; Caldwell Distribution LLC; MW Advisory LLC; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Trinity Holdings; MW Advisory LLC; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 10:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 11:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 12:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 13:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

Dated: __________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 11**

## **Request for Production to MW Advisory LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>SUPPLYBIT, LLC<br>Debtor. | Case No. 25-55423<br><br>Chapter 7 (Involuntary)<br><br>**JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET
OF REQUESTS FOR PRODUCTION DIRECTED TO MW ADVISORY LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that MW Advisory LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

## DEFINITIONS

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character

and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or

reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives,

including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "MW Advisory," "You," or "Your" means MW Advisory LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of MW LLC.

8. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

9. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

10. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

11. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

12. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

13. "Trinity Holdings" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits,

enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of MW Advisory, including any equity or debt financing and all transfers of money or other Assets to MW Advisory from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money,

value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to MW Advisory.

**<u>REQUEST NO. 7:</u>**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to MW Advisory.

**<u>REQUEST NO. 8:</u>**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting LLC; Bitsure LLC; Anchorage Lending CA, LLC; Caldwell Distribution LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**<u>REQUEST NO. 9:</u>**

Documents sufficient to show the organizational structure of MW Advisory, including the legal relationships between MW Advisory and any of its owners or subsidiaries, whether partially- or fully-held.

**<u>REQUEST NO. 10:</u>**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for MW Advisory.

**REQUEST NO. 11:**

Documents sufficient to identify every Person or entity that holds an equity interest in MW Advisory.

**REQUEST NO. 12:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; Trinity Holdings; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 14:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 15:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 17:**

All tax returns filed during the Relevant Time Period on behalf of MW Advisory.

**REQUEST NO. 18:**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

Dated: _________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 12**

## Request for Production to Trinity Holdings

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET
OF REQUESTS FOR PRODUCTION DIRECTED TO TRINITY HOLDINGS**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Trinity Holdings (as defined herein) produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character

and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or

reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives,

including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

8. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

9. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

10. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

11. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

12. "Trinity Holdings," "You," or "Your" means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, and any of Trinity Holdings' agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

# **REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Trinity Holdings, including any equity or debt financing and all transfers of money or other Assets to Trinity Holdings from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Trinity Holdings.

**<u>REQUEST NO. 7:</u>**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Trinity Holdings.

**<u>REQUEST NO. 8:</u>**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting LLC; Bitsure LLC; Anchorage Lending CA, LLC; Caldwell Distribution LLC; MW Advisory LLC; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**<u>REQUEST NO. 9:</u>**

Documents sufficient to show the organizational structure of Trinity Holdings, including the legal relationships between Trinity Holdings and any of its owners or subsidiaries, whether partially- or fully-held.

**<u>REQUEST NO. 10:</u>**

All articles of incorporation, partnership agreements, operating agreements, and/or founding and governing documents for Trinity Holdings.

**<u>REQUEST NO. 11:</u>**

Documents sufficient to identify every Person or entity that holds an equity interest in Trinity Holdings.

**REQUEST NO. 12:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Anchorage Lending CA, LLC; MW Advisory LLC; Ziliak Law, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 13:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 14:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 15:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 16:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**<u>REQUEST NO. 17:</u>**

All tax returns filed during the Relevant Time Period on behalf of Trinity Holdings.

**<u>REQUEST NO. 18:</u>**

Any Documents You provided to the IRS or any other tax authority concerning virtual currencies or digital currencies, including reporting of foreign accounts and reporting of capital gains.

Dated: _________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 13**

## **Request for Production to Ziliak Law, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET
OF REQUESTS FOR PRODUCTION DIRECTED TO
ZILIAK LAW, LLC**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Ziliak Law, LLC produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within thirty (30) days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or

otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses,

appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

8. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

9. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

10. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

11. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

12. "Trinity Holdings," means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

13. "Ziliak Law," "You," or "Your" means Ziliak Law, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Ziliak Law, LLC.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the

parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Trinity Holdings, including any of Your ownership, interests, stocks, warrants, options, or other rights associated with Trinity Holdings, whether direct or indirect or in whole or in part, and any equity or debt financing and all transfers of money or other Assets to Trinity Holdings from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Ziliak Law.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to Ziliak Law.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting LLC; Bitsure LLC; Trinity Holdings; Caldwell Distribution LLC; MW Advisory LLC; Anchorage Lending CA, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Trinity Holdings; MW Advisory LLC; Anchorage Lending CA, LLC; Zachary Ziliak; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 10:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 11:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 12:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 13:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# <u>Exhibit 14</u>

## Request for Production to Zachary Ziliak

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET**
**OF REQUESTS FOR PRODUCTION DIRECTED TO ZACHARY ZILIAK**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Zachary Ziliak produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or

otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses,

appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

8. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

9. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

10. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

11. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

12. "Trinity Holdings," means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

13. "You," or "Your" means Zachary Ziliak and any of his agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Zachary Ziliak.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the

parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Trinity Holdings, including any of Your ownership, interests, stocks, warrants, options, or other rights associated with Trinity Holdings, whether direct or indirect or in whole or in part, and any equity or debt financing and all transfers of money or other Assets to Trinity Holdings from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting LLC; Bitsure LLC; Trinity Holdings; Caldwell Distribution LLC; MW Advisory LLC; Anchorage Lending CA, LLC; Ziliak Law, LLC; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Trinity Holdings; MW Advisory LLC; Anchorage Lending CA, LLC; Ziliak Law, LLC; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 10:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**<u>REQUEST NO. 11:</u>**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**<u>REQUEST NO. 12:</u>**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**<u>REQUEST NO. 13:</u>**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

Dated: _______________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*

# **Exhibit 15**

## **Request for Production to Randy Heinig**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-55423 |
| SUPPLYBIT, LLC | ) | Chapter 7 (Involuntary) |
| Debtor. | ) | **JUDGE TIFFANY STRELOW COBB**<br>**United States Bankruptcy Judge** |

**HOCKOMOCK MINING COMPANY'S FIRST SET
OF REQUESTS FOR PRODUCTION DIRECTED TO RANDY HEINIG**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Definitions and Instructions set forth below, Hockomock Mining Company by and through its undersigned counsel, hereby requests that Randy Heinig produce documents responsive to the following requests (collectively, the "Requests," and individually, each a "Request"), within 30 days after service of these Requests, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other time and place as may be agreed among counsel or ordered by the Court.

**DEFINITIONS**

The following definitions shall apply to each Request:

1. "341 Meeting" means the meeting of creditors pursuant to section 341 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") held on March 17, 2026, in the Supplybit Chapter 7 Case (as defined herein).

2. "Assets" means any and all of the real or personal properties, chattel, businesses, rights, Intellectual Property, receivables and interests of any Person of every kind, nature, character and description, whether real, personal or mixed, tangible or intangible, accrued or contingent, or

otherwise relating to or utilized in that Person's business, directly or indirectly, in whole or in part, whether or not carried on the books and records of such Person, and whether or not owned in the name of such Person wherever located and howsoever held, and any rights therein, and includes but is not limited technologies, land, buildings, structures affixed to the land, machinery, equipment, furniture, inventory, currency, bank accounts, liquid assets, stocks, bonds, investments, accounts receivable, cryptocurrencies, digital content, deeds, cash, cash equivalents, and insurance policies and any rights therein.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more persons or entities including, but not limited to, spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, cablegrams, mailgrams, telegrams, telexes, cables, electronically transmitted messages (*e.g.*, "e-mail", Slack messages, WhatsApp messages, Telegram messages, Signal messages, or instant messaging), text messages, postings on Internet bulletin boards, or other forms of written, verbal or electronic correspondence, however transmitted, ESI, and documents, as defined herein.

4. "Document" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Bankruptcy Rules 7034 and 9014, and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Supplybit or its attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses,

appointment books, books of account, calendars, catalogs, checks, Communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, e-mail messages, text messages, Slack messages, WhatsApp messages, Telegram messages, Signal messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

5. "Electronically Stored Information" or "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata, system data, deleted data, and fragmented data.

6. "Financial Records" means any and all Documents and Communications, data, or information, in any form or medium, that relate to, reflect, or evidence a Person's finances, financial position and financial transactions, including but not limited to the Person's accounts, annual and quarterly budgets, balance sheets, profit and loss statements, Assets, liabilities, income, equity, expenses and tax statements for bank and investment accounts, any other accounting records, such as invoices, receipts, contracts, payroll, audit, budget, forecast and insurance records, loan documents, and any other Documents and Communications pertaining to the financial condition of any Person, or any of their affiliates, subsidiaries, partners, agents, or representatives, including in respect of any pledge, lien, charge, mortgage or other secured interest of any kind over the Person or its Assets.

7. "Person" shall mean any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

8. "RepairBit" means RepairBit LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of RepairBit LLC.

9. "Supplybit," means Supplybit, LLC, and any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Supplybit, LLC.

10. "Supplybit Chapter 7 Case" means the bankruptcy case commenced under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Ohio captioned *In re Supplybit, LLC* (Case No. 25-55423) (TSC).

11. "Trustee" means the trustee appointed in the Supplybit Chapter 7 Case, James A. Coutinho, or any successor thereto.

12. "Trinity Holdings," means the Trinity Holdings entity discussed at the 341 Meeting, which Mr. Groff testified is a holding company that purportedly owns RepairBit LLC, any of its agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Trinity Holdings.

13. "You," or "Your" means Zachary Ziliak and any of his agents, representatives, attorneys, accountants, officers, managers, directors, members, corporate parents, subsidiaries, employees, and any persons acting or purporting to act on behalf of Zachary Ziliak.

## INSTRUCTIONS

The following instructions shall apply to the Requests contained herein.

1. The Requests call for the production of all responsive Documents that are in Your possession, custody, or control, wherever located, regardless of whether they are possessed directly by You or Your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

2. Unless otherwise specified, the time period for these Requests is November 1, 2021 through the present (the "Relevant Time Period").

3. The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside of its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "each and every" as well as "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

4. A Request for a Document shall be deemed to include a Request for any non-identical copies or drafts of the Document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the Document, in addition to the Document itself. Any Document not produced pursuant to the production specifications and/or ESI protocol agreed upon by the

parties is to be produced in its original file folder, with all labels or similar markings or metadata intact and included, and with the name of the person from whose file it was produced.

5. If it is not possible to produce any Document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

6. If any portion of any Document or Communication is responsive to any Request, the entire Document must be produced.

7. If You claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested Documents, You must furnish a list identifying each Document for which the privilege or protection is claimed, together with the following information: date; length; sender; recipient; subject matter; and basis on which the Document is withheld consistent with the Federal Rules or Bankruptcy Rules.

8. Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

9. If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the Documents that are not subject to this contention.

10. If there are no Documents or Communications responsive to any particular Request or subpart thereof, You shall state so in writing.

11. All Documents produced in response to the Requests will be subject to the ESI protocol agreed upon by the parties.

12. These Requests are continuing and require further and supplemental production by You whenever You locate, acquire, or create additional responsive Documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications requested by the Trustee and creditors during the 341 Meeting.

**REQUEST NO. 2:**

All Documents and Communications that You have produced or plan to produce to the Trustee or other creditors.

**REQUEST NO. 3:**

All Documents and Financial Records regarding Supplybit that are in Your possession or control.

**REQUEST NO. 4:**

All Documents and Communications regarding Supplybit's Assets, wherever and howsoever held, that are in Your possession and control.

**REQUEST NO. 5:**

All Documents and Communications regarding the capitalization of Trinity Holdings, including any of Your ownership, interests, stocks, warrants, options, or other rights associated with Trinity Holdings, whether direct or indirect or in whole or in part, and any equity or debt financing and all transfers of money or other Assets to Trinity Holdings from any Person or entity.

**REQUEST NO. 6:**

All Documents and Communications evidencing or relating to any transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You.

**REQUEST NO. 7:**

All Documents and Communications evidencing or relating to any contemplated or potential transfers, actual transfers, distributions, payments, dividends, gifts, sales, dispositions, or any form of transfer or divestment of money, value, or other of Supplybit's Assets (or Supplybit's interest in a property) during the Relevant Time Period to You.

**REQUEST NO. 8:**

All Documents and Communications evidencing or relating to any past or present relationships or connections between or among You, Supplybit, and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting LLC; Bitsure LLC; Trinity Holdings; Caldwell Distribution LLC; MW Advisory LLC; Anchorage Lending CA, LLC; Ziliak Law, LLC; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 9:**

All Documents and Communications reflecting or relating to the corporate separateness (or lack thereof) between You, on the one hand, and, on the other hand, Supplybit and any of Supplybit's affiliates, including but not limited to Supplybit's officers, directors, managers, members, equity holders, equity sponsors, or lenders; Michael Groff; Wesley Decatur; Ryan Rossi; Kevin Kiss; RepairBit; Groff Consulting Group LLC; Bitsure LLC; Caldwell Distribution LLC; Trinity Holdings; MW Advisory LLC; Anchorage Lending CA, LLC; Ziliak Law, LLC; Randy Heinig; or any of the foregoing's affiliates.

**REQUEST NO. 10:**

All Documents and Communications relating to any loans or other debt facilities You or Your affiliates issued to Supplybit.

**REQUEST NO. 11:**

All Documents and Communications relating to any loans or other debt facilities Supplybit issued to You or Your affiliates.

**REQUEST NO. 12:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by You or Your affiliates of any obligation, expense, debt, or other liability of Supplybit, LLC, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

**REQUEST NO. 13:**

All Documents and relating to any payment, satisfaction, assumption, guarantee, indemnification, reimbursement, forgiveness, or other fulfillment by Supplybit or its affiliates of any obligation, expense, debt, or other liability of You or Your affiliates, whether direct or indirect, in whole or in part, at any time during the Relevant Time Period.

Dated: ________________, 2026
Cincinnati, Ohio

**DINSMORE & SHOHL LLP**

*/s/ Branson D. Dunlop*
Branson D. Dunlop (0090035)
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8340
Email: branson.dunlop@dinsmore.com

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Matthew B. Lunn
James M. Yoch, Jr.
Jared W. Kochenash
Skyler A. C. Speed
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: mlunn@ycst.com
jyoch@ycst.com
jkochenash@ycst.com
sspeed@ycst.com

*Co-Counsel for Hockomock Mining Company*